Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT:

**MICHAEL FRISCHKORN**
Fortville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KEVIN PATTERSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 48A02-1208-CR-628 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable Dennis D. Carroll, Judge
Cause No. 48D01-1004-FC-67

**August 22, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**DARDEN, Senior Judge**

Kevin Patterson appeals his convictions of battery, a Class C felony, Ind. Code § 35-42-2-1 (2009), and intimidation, a Class C felony, Ind. Code § 35-45-2-1 (2006).  He also appeals the trial court's order directing him to pay restitution.  We affirm.

## ISSUES

Patterson raises four issues, which we restate as:

I.  Whether the trial court abused its discretion in prohibiting Patterson from recalling a witness solely for impeachment purposes.

II.  Whether Patterson's conviction for intimidation is supported by sufficient evidence.

III.  Whether Patterson's convictions violate his state constitutional protection against double jeopardy.

IV.  Whether the court erred in ordering Patterson to pay restitution.

## FACTS AND PROCEDURAL HISTORY

In March 2010, George Allen, Sr., heard that his friend, Bennie Mae Patterson ("Bennie"), had been released from a hospital.  On the afternoon of March 16, Allen drove to her home to visit her.  Patterson, Bennie's grandson, was at her home when Allen arrived.  He told Allen, "I told you not to come back over to her, over here."  Tr. p. 131.  Allen did not know what Patterson was talking about because Patterson had never warned him to stay away from Bennie's house before.

Next, Patterson pushed Allen onto the floor, pulled his neck back, and stuck a knife to his neck.  Patterson cut Allen's neck with the knife, causing a puncture or stabbing wound less than an inch long but deep enough to penetrate the neck muscle and

2

cause bleeding. At that point, Bennie walked into the room, grabbed Patterson, and told him Allen had not done anything to her. Allen got up, and Patterson told him to leave the house. Allen left the house, but Patterson followed him to his car, still carrying the knife in his hand. At that point, he told Allen, "I should just go on and do away with you." *Id.* at 144. Allen drove away and called the police, who later interviewed him and sent him to the hospital. Meanwhile, Patterson went back inside, told Bennie he was sorry, and cleaned up the blood from Allen's cut.

The State charged Patterson with battery as a Class C felony and intimidation as a Class C felony. Before trial, Patterson told the judge he wanted to represent himself. The judge granted Patterson's request and appointed standby counsel. At trial, Patterson cross-examined several of the State's witnesses, including Allen. However, during the State's direct examination of Bennie, Patterson told the court outside the presence of the jury that he wanted his standby counsel to take over and represent him for the remainder of the trial. The court examined Patterson under oath and determined that it was appropriate for counsel to take over.

Next, Patterson, by counsel, indicated that he might want to question Allen under oath about Allen's criminal history. The court stated that Patterson could call Allen to the stand during his case-in-chief and ask about impeachable offenses "if you're going to examine him anyway and you believe you have other matters to talk with him about." *Id.* at 167. However, the court further told Patterson, "[I]f you have no reason to recall [Allen] except on that issue then you can simply make an offer of proof on that and we'll

3

go forward." *Id.* at 168. The presentation of evidence resumed and Patterson, by counsel, cross-examined Bennie.

During a subsequent hearing outside the presence of the jury, the court told Patterson's counsel, "I don't think it's appropriate for you to call [Allen] for the mere purpose of asking questions that should have been asked by your client when he cross examined him and impeachment that should have been conducted when Mr. Patterson was cross examining him." *Id.* at 199-200. The court further concluded:

> I think the first hurdle is, [Patterson's counsel] has to have [a] legitimate reason to get Mr. Allen back on the stand. And it can't be just some device so that he can bring up the fact that he has a confinement conviction way back when. So he has to have a legitimate reason to get him back on the stand. If he finds a legitimate reason to get him on the stand I'm probably going to let you impeach him with that conviction, [counsel].

*Id.* at 205.

In response to the court's ruling, Patterson submitted an offer of proof that included Allen's criminal history and portions of Allen's deposition that Patterson believed conflicted with Allen's trial testimony, particularly with respect to how much alcohol Allen had consumed on the day in question. After hearing Patterson's offer of proof, the court declined to allow Patterson to call Allen to the stand to question him on those subjects.

The trial moved forward, and the jury determined that Patterson was guilty as charged. The court subsequently sentenced Patterson to a term of five and a half years on each conviction, to be served concurrently, with three and a half years suspended to probation. The State did not submit any evidence on the subject of restitution, asserting

4

that Allen was still gathering his medical bills. The court ordered Patterson to pay restitution for Allen's medical bills, at a rate of $100 per month, with the total sum to be "plugged in by probation" after Allen submitted his medical bills. *Id.* at 390. This appeal followed.

DISCUSSION AND DECISION

I. IMPEACHMENT

Patterson argues that the court erred by preemptively prohibiting him from recalling Allen solely for impeachment purposes. He further argues that the court's ruling deprived him of his right under the federal and state constitutions to confront witnesses against him.

The Sixth Amendment to the United States Constitution provides, in relevant part, "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." Article 1, section 13 of the Indiana Constitution provides, in relevant part, "In all criminal prosecutions, the accused shall have the right . . . to meet the witnesses face to face." The right to cross-examine witnesses is one of the fundamental rights of our criminal justice system. *Washington v. State*, 840 N.E.2d 873, 886 (Ind. Ct. App. 2006), *trans. denied*. However, trial judges retain wide discretion to impose reasonable limits on the right to cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant. *Id.* We will find an abuse of discretion when the trial court controls the scope of cross-examination to the extent

5

that a restriction substantially affects the defendant's rights. *Williams v. State*, 779 N.E.2d 610, 612 (Ind. Ct. App. 2002).

In this case, prior to trial Allen had been deposed by Patterson's counsel. Patterson initially chose to represent himself at trial.[1] While he was proceeding pro se, he had an opportunity to cross-examine Allen and introduce any impeachment evidence permitted under the Indiana Rules of Evidence. Patterson questioned Allen at length and attempted to impeach Allen using his deposition. Patterson does not challenge any of the evidentiary rulings issued by the court during his pro se cross-examination of Allen. Under these circumstances, the trial court's restriction against calling Allen back to the stand solely to attempt to impeach him a second time did not substantially affect Patterson's rights under the federal and state constitutions to confront Allen.

Patterson nonetheless argues that he had a right to recall Allen for impeachment purposes. We disagree. In *Appleton v. State*, 740 N.E.2d 122 (Ind. 2001), Appleton argued that the trial court erred by allowing the State to call its own witness to the stand to impeach a witness with an out-of-court statement. Our Supreme Court stated, "a party is forbidden from placing a witness on the stand when the party's sole purpose in doing so is to present otherwise inadmissible evidence cloaked as impeachment." *Id.* at 125. The witness at issue had changed his story by the time of trial and would no longer implicate Appleton in the crimes at issue, so the State impeached him with a prior statement in which he implicated Appleton. However, the Court noted that the witness in question owned the home where the events began and had observed the attack that led to

---

[1] Patterson does not argue on appeal that the court erred by allowing him to represent himself.

6

the criminal charges. Thus, the Court concluded, it would have been reasonable to conclude that the State wanted the witness to testify for other purposes in addition to impeachment, and the trial court did not err by allowing the State to call the witness.[2] *Id.*

By contrast, in the current case, after Patterson had cross-examined Allen pro se, he later informed the court through standby counsel that he wanted counsel to call Allen back to the stand to impeach him with regard to his alcohol consumption and prior convictions. Patterson's counsel told the court he "would have other reasons to call [Allen]," Tr. p. 165, but he never identified them. As noted above, Patterson had already been given an opportunity to impeach Allen when he was proceeding pro se. Pursuant to the discussion in *Appleton*, and under the circumstances herein, we conclude that the trial court properly determined that Patterson should not be permitted to call Allen to the stand in his case-in-chief merely to have a second chance to impeach him. The court stated several times that Patterson could call Allen for purposes other than impeachment, but Patterson declined. The court did not abuse its discretion.

## II. SUFFICIENCY OF THE EVIDENCE

Patterson contends the evidence is insufficient to sustain his conviction for intimidation because he claims he did not threaten Allen as required by statute. When an appellant challenges the sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. *Joslyn v. State*, 942 N.E.2d 809, 811 (Ind. 2011). We consider only the probative evidence and reasonable inferences supporting the

---

[2] The Supreme Court went on to hold that the manner in which the State impeached its own witness was improper, but any error in allowing the impeachment was harmless.

verdict, and we will affirm if the evidence and reasonable inferences could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id.*

To obtain a conviction for intimidation as a Class C felony, the State was required to prove beyond a reasonable doubt that Patterson (1) knowingly or intentionally (2) communicated a threat (3) to Allen (4) while drawing or using a deadly weapon (5) with the intent that Allen engage in conduct against his will. Ind. Code § 35-45-2-1. A "threat" is defined, in relevant part, as "an expression, by words or action, of an intention to . . . unlawfully injure the person threatened or another person, or damage property . . . [or] commit a crime." Ind. Code § 35-45-2-1(c).[3]

Here, after stabbing Allen in the neck with a knife inside the house, Patterson allowed Allen to get up and, while still holding the knife, ordered Allen to leave Bennie's home. Allen went outside to get to his car, but Patterson followed him while continuing to wield the knife. Upon reaching his car, Patterson then told Allen, "I should just go on and do away with you." Tr. p. 144. This is sufficient evidence from which a reasonable trier of fact could determine beyond a reasonable doubt that Patterson threatened Allen with additional harm after Allen had left his grandmother's property. *See Leggs v. State*, 966 N.E.2d 204, 208 (Ind. Ct. App. 2012) (affirming conviction for Class C felony intimidation because Leggs's statements and conduct while wielding a knife provided sufficient evidence of his intent to threaten).

---

[3] This statute was amended after Allen committed his crimes, and subsection (c) is denominated as subsection (d) in the current version of the statute.

8

III. DOUBLE JEOPARDY

Patterson claims his convictions violate the Indiana Constitution's ban on double jeopardy because both crimes involved the use of a knife. Article 1, section 14 of the Indiana Constitution provides: "No person shall be put in jeopardy twice for the same offense." Indiana's double jeopardy clause was intended to prevent the State from being able to proceed against a person twice for the same criminal transgression. *Nicoson v. State*, 938 N.E.2d 660, 662 (Ind. 2010). Two or more offenses are the same offense if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense. *Sloan v. State*, 947 N.E.2d 917, 924 (Ind. 2011).

Patterson limits his claim to the "actual evidence" test. To show that two challenged convictions violate that test, a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the jury to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense. *Rexroat v. State*, 966 N.E.2d 165, 169 (Ind. Ct. App. 2012), *trans. denied*. Application of the actual evidence test requires the court to identify the essential elements of each of the challenged crimes and to evaluate the evidence from the jury's perspective. *Id.*

In *Leggs*, 966 N.E.2d 204, Leggs was convicted of intimidation and criminal confinement, among other crimes. He claimed that those convictions violated double jeopardy because the same evidence, his use of a knife, was used to enhance both crimes.

9

A panel of this Court noted that the use of a single deadly weapon during the commission of separate offenses may properly enhance the level of each offense because the repeated use of the same weapon to commit multiple crimes did not constitute the "same behavior" that triggers double jeopardy protections. *Id.* at 209. In Leggs's case, the evidence established that he used the knife to stab at the victim, then to slash at her legs, and finally in the course of holding her on the ground. Thus, the court concluded that his conviction for multiple crimes enhanced by the use of the knife did not violate double jeopardy.

In Patterson's case, the evidence presented to the jury established that he used a knife inside the house to stab Allen in the neck. Next, after Patterson allowed Allen to stand up, Patterson ordered him to leave the house and followed him to his car while continuing to wield the knife. Upon reaching Allen's car, Patterson then told Allen, "I should just go on and do away with you." Tr. p. 144. During closing arguments, the prosecutor described Allen's conduct, and he identified different acts by Allen which separately supported each crime. As in *Leggs*, Patterson's use of the knife while committing battery inside the house and intimidation at or near Allen's car outside does not constitute the "same behavior" for double jeopardy purposes, and his convictions for multiple crimes enhanced by the use of the knife do not violate Indiana's Double Jeopardy Clause.

## IV. RESTITUTION

Patterson claims the trial court erred by failing to set the amount of restitution he would be required to pay, choosing instead to leave it to the probation department to

establish the amount. As an initial matter, we must determine whether this claim has been preserved for appellate review.

In general, appellate courts in this state will review a trial court's restitution order even where the defendant did not object. *Rich v. State*, 890 N.E.2d 44, 48 (Ind. Ct. App. 2008), *trans. denied*. The rationale for such review is that a restitution order is part of the sentence, and it is the duty of appellate courts to bring illegal sentences into compliance. *Id*. However, error invited by the complaining party is not reversible error. *Booher v. State*, 773 N.E.2d 814, 822 (Ind. 2002). Stated differently, a party may not take advantage of an error that he or she commits, invites, or which is the natural consequence of the party's own neglect or misconduct. *Wright v. State*, 828 N.E.2d 904, 907 (Ind. 2005).

In this case, at sentencing the State did not submit any evidence as to restitution. The prosecutor explained to the court that Allen, who was not present at the hearing, had been unable to obtain copies of his bills for medical treatment caused by Patterson's battery. At that point, the court determined, "[Rather] than to have Mr. Patterson come back and do this again, we'll be real [sic] focused and we'll say that bills incurred by Mr. Allen at Saint Johns' [sic] in connection with this date and these injuries are subject to restitution." Tr. p. 378. The court further stated, "[W]e'll just instruct the probation department to gather up those bills from Saint Johns [sic] and just insert that figure." *Id.* at 379. At that point, Patterson stated, "Yes, sir." *Id.*

After announcing Patterson's sentence, the court stated:

11

> In terms of restitution, as we talked about earlier, there is going to be a restitution order. The blank will be filled in by probation *by the defendant's acquiescence or agreement* but we're talking specifically about the bills incurred at Saint Johns [sic] in the emergency room, and overnight, and lab and scans that were taken of the injuries that he received at the hands of Mr. Patterson. That restitution will be required.

*Id.* at 389 (emphasis added). Patterson did not object or otherwise seek to correct the court's statement.

Based on this discussion, we conclude that Patterson agreed with, or through neglect gave the court the impression that he agreed with, the court's suggestion that the probation department could later determine the total amount of restitution owed to Allen. Having agreed with the court's proposed course of action, he cannot now challenge the court's decision on appeal.[4] *See Booher*, 773 N.E.2d at 822 (determining that Booher invited any error from the trial court's reduction of an A felony to a B felony at sentencing because he agreed with the court's reduction).

## CONCLUSION

For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

BAKER, J., and FRIEDLANDER, J., concur.

---

[4] We do not read the trial court's comments during the sentencing hearing as precluding Patterson from filing a petition to challenge Allen's bills if he believes they are not authentic or are for treatment of conditions unrelated to the crimes at issue here.