# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

**FILED**

Jul 27 2016, 5:53 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

R. Patrick Magrath
Alcorn Sage Schwartz & Magrath, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| William Sherman Wilder, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | July 27, 2016 <br><br> Court of Appeals Case No. <br> 36A05-1512-CR-2278 <br><br> Appeal from the Jackson Circuit Court. <br> The Honorable Richard W. Poynter, Judge. <br> Cause No. 36C01-1410-FA-22 |

**Darden, Senior Judge**

# Statement of the Case

William Sherman Wilder appeals his three convictions of child molesting, all Class A felonies.[1] He also appeals his sixty-five-year sentence. We affirm.

# Issues

Wilder raises two issues, which we restate as:

    I.    Whether there is sufficient evidence to sustain his convictions.

    II.    Whether his sentence is inappropriate in light of the nature of the offense and the character of the offender.

# Facts and Procedural History

On the night of December 31, 2013, thirteen-year-old A.B. sneaked out of her home with her thirteen-year-old friend, Khloe Clark, to attend a party. Around midnight, A.B. and Khloe arrived at an apartment in Seymour, Indiana.

Several other people, including Wilder, were present. It is unclear whether this was the first time A.B. had met Wilder. Vodka was provided to everyone, including A.B., who became intoxicated. Khloe saw Wilder kissing A.B. at the party during the evening. Later, Wilder took A.B. into a bedroom, where she lay down on a bed. He closed the door, approached A.B., and took off her

---

[1] Ind. Code § 35-42-4-3 (2007).

shorts. Next, he took off his pants, climbed on A.B., and put his penis in her vagina. After fifteen or twenty minutes, Wilder stopped and left the room.

[5] On another evening in January 2014, A.B. went to a trailer home in Seymour to visit Lacie Thompson. Lacie's mother and her mother's boyfriend were also present. A.B. and Lacie drank tequila, and A.B. became intoxicated. Wilder arrived to visit Lacie's mother. Later, Lacie's mother announced she and Lacie were going to the grocery store and asked Wilder to leave. He left the house when Lacie and her mother left, but he returned five minutes later. Lacie's mother's boyfriend was in a bedroom, but A.B. and Wilder were otherwise alone.

[6] Wilder sat next to A.B. and touched her shoulder. She told him to "leave her alone" and that "he wasn't supposed to be there." Sept. 1, 2015 Tr. p. 27. Wilder responded, "Well, I'm here so what do you want to do?" *Id.* She said, "Nothing." *Id.* Despite A.B.'s objections, Wilder tried to remove her shirt. She told him to "stop and leave me alone." *Id.* at 28. A.B. also kept pushing him away. Wilder forcibly removed the intoxicated girl's clothes and fondled her. A.B. did not call out for help because she felt "scared, trapped" and thought Lacie's mother's boyfriend "probably would have thought it was my fault." *Id.* at 31.

[7] Next, Wilder pushed A.B. onto the couch, got on top of her, and put his penis in her vagina. After five minutes, Wilder heard Lacie and her mother returning, so he got up and ran out the back door of the trailer. A.B. tried to get

dressed and told Lacie what happened. Lacie urged A.B. to tell Lacie's mother, but A.B. did not because she was scared.

[8] Later in January 2014, A.B. and Lacie were playing video games with Devin Dunn in a bedroom at the same apartment where the New Year's Eve party had been held. Wilder occasionally stayed at the apartment, and he arrived while the group was playing video games. A.B. stayed for the night, intending to sleep on a futon. However, Wilder was already on the futon, and he refused Lacie's request to move. As a result, A.B. laid out some blankets on the floor outside Lacie's room. Everyone but Wilder and A.B. stayed in the bedroom, playing video games.

[9] A.B. testified that she got up in the middle of the night and went to the bathroom. Wilder was waiting for her when she left the bathroom and pulled her over to the futon, where he laid her down. Next, Wilder tried to kiss A.B., but she pushed him away. Undeterred, Wilder pulled up her nightgown and put his penis in her vagina. Sometime later, Dunn left Lacie's bedroom and saw the two of them. Dunn told Wilder to get off of A.B. and took her into the bedroom. Wilder left, and A.B. called her mother to come pick her up.

[10] On January 25, 2014, Dallas Johnson agreed to drive A.B. to her brother's house. Wilder called Johnson, who was a relative of Wilder's, and asked for a ride to work. Johnson picked up Wilder, over A.B.'s objection. Next, Johnson drove to a parking lot and stopped the truck. Sometime later, a police officer saw the truck and approached to see if the occupants were stranded. A.B. told

the officer the men knew her mother, but when the officer called A.B.'s mother, she denied knowing the men. The officer drove A.B. to her mother's workplace. After A.B. left, Johnson asked Wilder whether he had sex with A.B., and Wilder laughingly said yes.

[11] Later that same day, A.B.'s mother called the officer and asked her to come to her house. A.B. was not present, and her mother showed the officer text messages on A.B.'s phone. One of the messages was from Wilder, and he instructed A.B. not to tell the police anything.

[12] An investigation by the police and the Department of Child Services ensued. During the investigation, Wilder asked Johnson to give him an alibi by telling the police that they had been together on December 31, 2013, during the time when Wilder had been at the party. Johnson said he would not lie for Wilder.

[13] The State charged Wilder with three counts of Class A felony child molesting and alleged that he was an habitual offender. While Wilder was incarcerated, he wrote multiple letters asking acquaintances to give drugs to A.B. and, once she was intoxicated, to make a video recording of her saying that she made up the sexual assault allegations. In an undated letter to an unnamed recipient, he wrote that A.B. "likes meth and weed" and said he would "repay every dime" for purchasing the drugs to give A.B. October 5, 2015 Tr. Ex. 1. Wilder further wrote, "Bribe, lie, threat, cheat, manipulate, etc. . . . I don't care." *Id.*

[14] Apparently, Wilder had asked his acquaintance Marvin Perry to obtain a video recording of A.B. stating that she had lied about Wilder but was unable to

convince him to follow through. In a May 12, 2015 letter to Johnson, Wilder wrote, "I don't feel at least [sic] bit sorry for what is and will happen to Marvin. He had his chance to go to [A.B.] and get her to do the video I been [sic] talking about." *Id.*

[15] In a June 29, 2015 letter to Johnson, Wilder stated he needed "someone sneaky enuff [sic] to go to [A.B.] and get her to amitt [sic] on video that it was all a lie and that nothing happened. And if someone can get it on video of [A.B.] drink [sic] or doing drugs that would play in my favor." *Id.* Wilder also wrote, "If you know someone that will get the videos of [A.B.] I could be out before the end of July." *Id.*

[16] In a July 8, 2015 letter to Johnson, Wilder asked him to "find someone to go get the videos I asked for. Proof of [A.B.] dranking [sic], doing drugs, and partying will also be a big help on my behalf. The more info you or anyone else can get will help make me look better and make her look more like the P.O.S. lier [sic] that she is." *Id.* Wilder further stated, "If you got what I asked for I would buy a place were [sic] you could live rent free. You kinda would be working for me for rent." *Id.*

[17] In later letters to Johnson, dated August 12 and August 13, 2015, Wilder mentioned a jailhouse acquaintance named Bobby that would be released soon and had promised to get "the videos of [A.B.] to fully clear [Wilder's] name." *Id.* Nevertheless, he again asked Johnson to have Perry get a video of [A.B.]

"saying that nothing never [sic] happened" and deliver copies of the video to the judge, the prosecutor, and his lawyer. *Id.*

[18] A.B. experienced substantial psychological trauma as a result of Wilder's sexual assaults. She has received psychiatric treatment from inpatient and outpatient facilities. In addition, she has been prescribed medicine to address "depression, anxiety, suicidal thoughts." October 5, 2015 Tr. p. 31.

[19] Wilder waived his right to a trial by jury. The trial court held a bifurcated bench trial. The court first heard evidence on the three child molesting charges and determined Wilder was guilty as charged. Next, the trial court heard evidence on the habitual offender sentencing enhancement and concluded that Wilder was an habitual offender. Later, the court imposed a sixty-five-year sentence. Wilder now appeals.

# Discussion and Decision

## 1. Sufficiency of the Evidence

[20] Wilder argues his convictions are based solely on A.B.'s testimony, which he characterizes as inconsistent and contradicted by other evidence. In response, the State asserts A.B.'s testimony should not be discounted and is sufficient to support Wilder's convictions.

[21] In addressing a claim of insufficient evidence, an appellate court must consider only the probative evidence and reasonable inferences supporting the judgment, without weighing evidence or assessing witness credibility, and determine

therefrom whether a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Turner v. State*, 953 N.E.2d 1039, 1059 (Ind. 2011). A conviction for child molesting may rest solely upon the uncorroborated testimony of the victim. *Rose v. State*, 36 N.E.3d 1055, 1061 (Ind. Ct. App. 2015).

[22] Appellate courts may, however, apply the "incredible dubiosity" rule to impinge upon a fact finder's function to assess the credibility of a witness. *Turner*, 953 N.E.2d at 1059. If a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. *Love v. State*, 761 N.E.2d 806, 810 (Ind. 2002). The fact that the victim may have made inconsistent statements does not make his or her trial testimony inherently improbable. *Newsome v. State*, 686 N.E.2d 868, 875 (Ind. Ct. App. 1997).

[23] We further note that Wilder waived his right to a trial by jury and submitted his case to the trial judge for a decision. Trial judges are presumed to know the law, to apply the law to the facts and, in general, are able to weigh the impact of inconsistencies on a witness's testimony. *See Leggs v. State*, 966 N.E.2d 204, 208 (Ind. Ct. App. 2012) ("We presume the judge knows and will follow the applicable law.").

[24] To convict Wilder of child molesting as a Class A felony, the State was required to prove beyond a reasonable doubt that Wilder (1) a person at least twenty-one years of age (2) performed or submitted to sexual intercourse or deviate sexual

conduct (3) with A.B. (4) a child under fourteen years of age. Ind. Code § 35-42-4-3.

[25] Here, A.B. testified unequivocally that on three occasions, Wilder, who was older than twenty-one years of age, sexually assaulted her by forcing her to submit to sexual intercourse when she was thirteen years of age. Parts of her testimony were corroborated by other evidence. Specifically, Wilder admitted to Johnson that he had sex with A.B. He also asked Johnson to give him a false alibi for the night of December 31, 2013. In addition, on December 31, 2013, Khloe saw Wilder kissing A.B. during the party. Finally, A.B.'s mother showed a police officer Wilder's text message to A.B. instructing her to tell the police nothing. Based on the corroborating evidence, the incredible dubiosity rule does not apply to this case. *See Carter v. State*, 44 N.E.3d 47, 54 (Ind. Ct. App. 2015) (declining to determine the rape victim's testimony was incredibly dubious because her testimony was supported by circumstantial evidence, including defendant's admission to having sexual contact with the victim).

[26] Wilder points to apparently conflicting testimony about the December 31, 2013 party. Specifically, A.B. testified that Wilder took her into a bedroom and sexually assaulted her. By contrast, Devin Dunn testified that during the night he went to the kitchen to get a beer, and as he passed through the living room he saw A.B. and Wilder by themselves. While he was in the kitchen, Wilder called out to him to stay in the kitchen for a minute. Dunn sat in the kitchen, drinking beer, and heard the sounds of people having sex in the living room. Later, Wilder came into the kitchen and told Dunn he was free to go. Dunn

walked through the living room, and A.B. was the only one there. Further, Khloe Clark testified that during the night she went into the living room and saw A.B. laying on the floor naked, and Wilder was also present. Dunn and Clark's testimony tends to corroborate that Wilder had sex with A.B. Any discrepancies as to time and location were for the finder of fact to resolve. *See Baber v. State*, 870 N.E.2d 487, 490 (Ind. Ct. App. 2007) (finder of fact was in the best position to determine whether defendant could have molested the victim as described by the victim), *trans. denied*. The evidence is sufficient to sustain Wilder's three convictions for child molestation.

## 2. Appropriateness of Sentence

[27] Wilder asks the Court to reduce his sentence to forty years. The State contends Wilder's sentence is justifiable under the circumstances of the case and Wilder's character.

[28] Article 7, section 6 of the Constitution of the State of Indiana authorizes the Court to review and revise sentences. This authority is implemented through Indiana Appellate Rule 7(B), which permits the Court to revise a sentence "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."

[29] The principal purpose of sentencing review under Appellate Rule 7(B) is to level the outliers, not to achieve a perceived "correct" result in each case. *Rose*, 36 N.E.3d at 1063. Our inquiry focuses on the defendant's aggregate sentence,

rather than the number of counts, the length of the sentence on any individual count, or whether any sentences are concurrent or consecutive. *Remy v. State*, 17 N.E.3d 396, 401-402 (Ind. Ct. App. 2014), *trans. denied*. Whether a sentence is inappropriate turns on the culpability of the defendant, the severity of the crime, any damage done to others, and a myriad of other factors that come to light in a given case. *Bratcher v. State*, 999 N.E.2d 864, 870 (Ind. Ct. App. 2013), *trans. denied*. It is the defendant's burden to persuade the reviewing court that the sentence is inappropriate. *Remy*, 17 N.E.3d at 402.

[30]  At the time Wilder committed his offenses, a Class A felony was punishable by a maximum sentence of fifty years, a minimum sentence of twenty years, and an advisory sentence of thirty years. Ind. Code § 35-50-2-4(a) (2014). In addition, a person found to be a habitual offender could be sentenced to a fixed term that was not less than the advisory sentence for the underlying offense nor more than three times the advisory sentence for the underlying offense, and in no case could exceed thirty years. Ind. Code § 35-50-2-8 (2005). The trial court sentenced Wilder to concurrent thirty-five year terms for each Class A felony conviction, enhanced by thirty years for the habitual offender determination, for an aggregate sentence of sixty-five years.

[31]  Beginning with the nature of the offenses, Wilder had sexual intercourse with a thirteen-year-old on three separate days and occasions within the timespan of two months. On the first two occasions, A.B. was incapacitated due to intoxication and was thus especially vulnerable. On the night of December 31, 2013, Wilder and A.B. were together for several hours before he sexually

molested her. He had ample opportunity to leave the incapacitated child alone, but he instead chose to prey on her. As for the second and third sexual molestations, Wilder could have desisted after the December 31, 2013 molestation, but he chose to persist in his highly illegal conduct despite her physical and verbal resistance. He later texted A.B. to instruct her not to tell the police anything, which frightened A.B.

[32] Wilder inflicted severe emotional harm upon A.B., causing her to develop anxiety, depression, and suicidal thoughts to the point that she required inpatient and outpatient psychiatric treatment and medication. In addition, after Wilder was arrested, he undertook an extensive campaign to persuade others to malign and further harm thirteen-year-old A.B. by getting her high on illegal drugs and, once she was impaired, to get her to recant her allegations while being recorded.

[33] Turning to the character of the offender, Wilder, who was thirty-four years old at his sentencing hearing, has a lengthy criminal history. His habitual offender determination was based on a 1999 conviction for child molesting, a Class C felony, and a 2009 conviction for failure to register as a sex offender, a Class D felony. In addition, Wilder has fifteen misdemeanor convictions for offenses including failure to register as a sex offender, false informing, battery, criminal trespass, conversion, driving while suspended, and disorderly conduct. He accrued his convictions at a rate of one or two every few years, demonstrating an unwillingness to comply with the law for any period of time. Wilder also violated the terms of probation on two prior occasions.

Further, while Wilder was incarcerated and this case was pending, he arguably engaged in additional criminal conduct by attempting to recruit others to give a minor, A.B., controlled substances and record her in an impaired state. Wilder has failed to demonstrate that his sentence is inappropriate.

## Conclusion

For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

Riley, J., and Barnes, J., concur.