## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 09 2016, 8:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Gary A. Cook<br>Deputy Public Defender<br>Peru, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana<br><br>George P. Sherman<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael Stewart,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | August 9, 2016<br><br>Court of Appeals Case No.<br>34A02-1512-CR-2352<br><br>Appeal from the Howard Superior Court<br><br>The Honorable William C. Menges, Jr., Judge<br><br>Trial Court Cause No.<br>34D01-1309-FD-727 |

**Vaidik, Chief Judge.**

# Case Summary

Michael Stewart was charged with three drug-related crimes, and the jury convicted him on only one count—Class D felony dealing in a synthetic drug lookalike substance. Stewart now appeals, challenging the sufficiency of the charging information for that count. Because Stewart did not file a motion to dismiss this charge twenty days before the omnibus date and because he has not established fundamental error, we affirm the trial court.

# Facts and Procedural History

In September 2013, United States Postal Inspector Douglas Biel examined a dented and partially torn package at the post office that had been sent via Express Mail from Las Vegas, Nevada, and was addressed to Stewart in Kokomo. When Biel looked inside the partially torn area of the box, he saw vials containing a leafy substance. Biel obtained a search warrant for the package. When Biel later opened the package, he found Ziploc bags that contained approximately 1500 vials with either yellow or white labels. The vials with the yellow label were marked "High Riders Herbal Incense" and the vials with the white label were marked "High Times Herbal Incense" (Exhibit 7). Biel sent two vials, one of each kind, to the Indiana State Police laboratory for a "fast track" analysis. Tr. p. 117. The analysis revealed that the vial labeled High Riders contained the presence of 5-Fluoro-PB-22, a synthetic drug

according to an emergency rule of the Indiana Board of Pharmacy,[1] while the vial labeled High Times indicated the presence of AB-PINACA, a non-controlled substance at the time.[2] *Id.* at 123.

[3] After receiving the results, Biel contacted the Kokomo Police Department in order to do a controlled delivery of the package to Stewart. Stewart signed for the package, following which a search warrant was obtained for the house. In executing the search warrant, police found marijuana (Exhibits 18 and 19) in a nightstand drawer in the bedroom. Police also found incense (Exhibits 16 and 17) in a dresser drawer in the bedroom.[3] The incense contained XLR-11, a synthetic drug according to Indiana Code section 35-31.5-2-321(1)(XXX),[4] as well as AB-PINACA and AB-FUBINACA, both non-controlled substances at the time.[5] Tr. p. 154.

[4] The State charged Stewart with the following three counts:

---

[1] 5-Fluoro-PB-22 was added to the synthetic-drug statute effective July 1, 2016. *See* P.L. 168-2016, § 10; Ind. Code § 35-31.5-2-321(1)(EEEE). At the time of the events in this case, however, it was a synthetic drug only by virtue of the Pharmacy Board's emergency rule. *See* Tr. p. 123.

[2] AB-PINACA was added to the synthetic-drug statute effective July 1, 2016. *See* P.L. 168-2016, § 10; I.C. § 35-31.5-2-321(1)(IIII).

[3] The house where the package was delivered belonged to Stewart's girlfriend, and he stayed there part-time. When he stayed there, they shared a bedroom.

[4] XLR-11 was added to the synthetic-drug statute effective May 7, 2013, shortly before the events in this case. *See* P.L. 196-2013, § 16; I.C. § 35-31.5-2-321(1)(XXX).

[5] Like AB-PINACA, AB-FUBINACA was added to the synthetic-drug statute effective July 1, 2016. *See* P.L. 168-2016, § 10; I.C. § 35-31.5-2-321(1)(JJJJ).

- Count I: Class D felony dealing in a synthetic drug lookalike substance under Indiana Code section 35-48-4-10.5 for possessing with intent to deliver "5-Fluoro-PB-22 a substance determined to be illegal by Emergency Rule 13-305(E) of the Indiana Board of Pharmacy and XLR-11 in an amount greater than 2 grams"

- Count II: Class D felony possession of marijuana

- Count III: Class D felony dealing in a synthetic drug lookalike substance under Indiana Code section 35-48-4-10.5 for possessing with intent to deliver an unspecified "synthetic drug lookalike substance, in an amount greater than 2 grams"

Appellant's App. p. 31, 36, 38.  According to the probable-cause affidavit, the package contained 1500 vials, and about half of them contained 5-Fluoro-PB-22.  *Id.* at 40.  A jury found Stewart guilty of Count III but not guilty of Counts I and II.

[5]   Stewart now appeals his conviction for Count III.

# Discussion and Decision

[6]   Stewart challenges the charging information for Count III, which alleged that he committed Class D felony dealing in a synthetic drug lookalike substance.

He argues that the charging information "did not indicate specificity of criminality committed by [him]."[6] Appellant's Br. p. 5.

[7] At the time of the offenses in this case, a person who knowingly or intentionally possessed with intent to deliver a synthetic drug lookalike substance in an amount more than two grams committed Class D felony dealing in a synthetic drug lookalike substance. Ind. Code Ann. § 35-48-4-10.5(b)(2), (c)(1)(B) (West Supp. 2013). "Synthetic drug lookalike substance" means "[a] substance, *other than a synthetic drug*, which any of the factors listed in subsection (c) would lead a reasonable person to believe to be a synthetic drug." Ind. Code § 35-31.5-2-321.5(a) (emphasis added). Subsection (c) then provides that in determining whether a substance is a synthetic drug lookalike substance, the following factors may be considered:

> (1) The overall appearance of a dosage unit of the substance, including its shape, color, size, markings or lack of markings, taste, consistency, and any other identifying physical characteristics.
>
> (2) How the substance is packaged for sale or distribution, including the shape, color, size, markings or lack of markings, and any other identifying physical characteristics of the packaging.

---

[6] Stewart also argues that "no crime was alleged." Appellant's Br. p. 5. Because Stewart fails to support this argument with cogent reasoning, he has waived this issue for review. In any event, dealing in a synthetic drug lookalike substance is a crime. *See* Ind. Code § 35-48-4-10.5.

(3) Any statement made by the owner or person in control of the substance concerning the substance's nature, use, or effect.

(4) Any statement made to the buyer or recipient of the substance suggesting or implying that the substance is a synthetic drug.

(5) Any statement made to the buyer or recipient of the substance suggesting or implying that the substance may be resold for profit.

(6) The overall circumstances under which the substance is distributed, including whether:

> (A) the distribution included an exchange of, or demand for, money or other property as consideration; and

> (B) the amount of the consideration was substantially greater than the reasonable retail market value of the substance the seller claims the substance to be.

*Id.* at (c).  The charging information for Count III alleged that Stewart possessed with intent to deliver "a synthetic drug lookalike substance, in an amount greater than 2 grams."  Appellant's App. p. 31.

[8]     Indiana Code section 35-34-1-2 sets forth the requirements for a charging information, including that it state "the nature and elements of the offense charged in plain and concise language without unnecessary repetition" and that it contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Ind. Code § 35-34-1-2(a)(4), (d).  The purpose of a charging information is to advise the defendant of the particular

offense charged so that he can prepare a defense and be protected from being twice placed in jeopardy for the same offense. *Leggs v. State*, 966 N.E.2d 204, 207 (Ind. Ct. App. 2012).

[9] The trial court may, upon the defendant's motion, dismiss a charging information if it "does not state the offense with sufficient certainty" or if the "facts stated do not constitute an offense." Ind. Code § 35-34-1-4(a). The defendant must file such motion no later than twenty days (if the defendant is charged with a felony) before the omnibus date. *Id.* at (b). The reasons for this rule include giving the State an opportunity to amend the charging information before trial, thus saving both time and expense. *Brown v. State*, 442 N.E.2d 1109, 1114 (Ind. 1982), *reh'g denied*. In addition, defendants should be required to promptly raise error in the trial court when it occurs "rather than remain silent, hoping for an acquittal, and if that does not occur, then raise the question of error for the first time" on appeal. *Id.* (quotation omitted).

[10] Stewart, however, did not file a motion to dismiss Count III. Failure to make a timely challenge to an allegedly defective charging information results in waiver unless fundamental error has occurred. *See Hayden v. State*, 19 N.E.3d 831, 840 (Ind. Ct. App. 2014), *trans. denied*; *Leggs*, 966 N.E.2d at 207-08; *Truax v. State*, 856 N.E.2d 116, 123 (Ind. Ct. App. 2006). Fundamental error is an extremely narrow exception to the waiver rule where the defendant faces the heavy burden of showing that the alleged error is so prejudicial to the defendant's rights as to make a fair trial impossible. *Ryan v. State*, 9 N.E.3d 663, 668 (Ind. 2014), *reh'g denied*. For an error in a charging information to be fundamental,

"it must mislead the defendant or fail to give him notice of the charges against him so that he is unable to prepare a defense to the accusation." *Leggs*, 966 N.E.2d at 208 (quotation omitted).

[11] Stewart does not make such a claim here. Rather, he asserts that fundamental error occurred because according to the Indiana Supreme Court's recent opinion in *Tiplick v. State*, 43 N.E.3d 1259 (Ind. 2015), neither the charging information for Count III nor the probable-cause affidavit referenced an emergency rule of the Pharmacy Board. Appellant's Br. p. 6. Stewart's reliance on this case is misplaced.

[12] Tiplick was charged with, among other things, dealing, conspiracy to commit dealing, and possessing synthetic drugs. The probable-cause affidavit asserted that the synthetic drug was XLR-11. Although XLR-11 is listed as a synthetic drug today in Indiana Code section 35-31.5-2-321(1)(XXX), at that time it was only illegal pursuant to an emergency rule of the Pharmacy Board. Notably, Tiplick's charging informations did not reference the emergency rule. Tiplick filed a motion to dismiss the charging informations because without reference to the emergency rule, "there [was] nothing to indicate with specificity the criminality of XLR11." *Tiplick*, 43 N.E.3d at 1270. Our Supreme Court held that the charging informations for these counts were inadequate because they failed to list the emergency rule and therefore ordered them to be dismissed. *Id.* However, the Court noted that the State could re-file the charging informations with proper reference to the emergency rule. *Id.* at 1270 n.13.

[13]     Here, however, Count III is for a synthetic drug *lookalike* substance, not a synthetic drug. By definition, a synthetic drug lookalike substance cannot be a synthetic drug and would never be identified as such by the legislature or the Pharmacy Board. Therefore, the concerns in *Tiplick* are simply not at issue here. Moreover, Stewart does not argue that the charging information for Count III was inadequate because it failed to list a synthetic drug that the substance he was charged with dealing looked like. Because Stewart does not allege how the failure to include an emergency rule in the charging information for Count III or the probable-cause affidavit misled him or rendered him unable to prepare a defense, he has not established fundamental error. *See Leggs*, 966 N.E.2d at 208.[7]

[14]     Affirmed.

         Barnes, J., and Mathias, J., concur.

---

[7] Stewart also argues that the trial court abused its discretion in admitting into evidence a police officer's testimony about how people react when they use the substance identified as Exhibit 17 (incense containing XLR-11), such as having convulsions and memory loss. Tr. p. 234. Specifically, Stewart claims that the probative value of such testimony is substantially outweighed by the danger of unfair prejudice.

The State responds that Stewart "has failed to show how he was harmed by this testimony [because] he was acquitted of the charge that alleged he had possessed XLR-11 [(Count I)]." Appellee's Br. p. 11. We agree. Count I is the only charge that lists XLR-11. But even if the officer did not limit his answer to XLR-11, we fail to see how testimony that synthetic drugs (or substances meant to look like synthetic drugs) can have adverse effects on users was unduly prejudicial, given that it is common knowledge that illicit substances can be dangerous.