MAY, Judge,
dissenting.
[27] The majority determines “neither 170 I.A.C, 4-1-26, nor the 2002 NESC, placed Bellwether on notice that Duke’s control over land surrounding the Easement widened from ten to approximately twenty-three feet due to horizontal strike clearance requirements.” (Op. at 1046.) I believe we are required to hold Bellwether did have notice, and I must therefore respectfully dissent.
[28] The majority correctly notes “the accrual of Bellwether’s claim could not be determined simply by reference to 170 I.A.C. 4-1-26. In fact, such determination could not even be accomplished by referencing the 2002 NESC.” (Id.) But in light *1049 of recent precedent from our Indiana Supreme Court, I do not believe we can say the IURC regulation did not place Bellwether on notice or .that the circumstances are “too attenuated,” (id.), to permit us to conclude any taking was not ascertainable.
[29] In Tiplick v. State, 43 N.E.3d 1259 (Ind.2015), our Supreme Court addressed whether there was adequate notice[8] of a law that, similarly, was “arcane.” (Appellant’s App. at 2.) Tiplick was charged with eighteen drug-related counts, including dealing and conspiracy to commit dealing in look-alike substances and dealing, conspiracy to commit dealing, and possession of synthetic drugs. The charging information alleged Tiplick’s stores sold a “synthetic drug a/k/a spice.” Tiplick, 43 N.E.3d at 1261. It did not allege the precise compound, but the probable cause affidavit asserted the packages purchased contained “XLR11 [ (l-(5-flouropentyl)in-dol-3-yl)-(2, 2, 3, 3-tetramethylcyclopro-pyl)methanone].” Id.
[30] Tiplick moved to dismiss the charges, claiming, among other things, the statutory definition of “synthetic drug” and the statutes criminalizing “look-alike” substances were void for vagueness. (Id. at 1262.) At the time, Ind,Code § 35-31.5-2-321, which defined ‘synthetic drug,’ listed over sixty specific chemical compounds, and it included eleven sections regarding compounds “structurally derived” from other chemicals. It provided a synthetic drug is “Any compound determined to be a synthetic drug by rule adopted under IC 25-26-13-4.1.” Ind.Code § 35-31.5-2-321(9). Ind.Code § 25-26-13-4.1 provided the Pharmacy Board could adopt an emergency rule to declare that a substance is a synthetic drug if the substance was scheduled or emergency scheduled by the United State's Drug Enforcement Administration or by another state.
[31] This court agreed with Tiplick that those statutes were void for vagueness because their numerous cross-references, undefined terms, and required monitoring of Indiana statutes and promulgations of the Pharmacy Board could not be understood by an ordinary person. Tiplick v. State, 25 N.E.3d 190, 196 (Ind.Ct.App.2015), transfer granted, opinion vacated, 43 N.E.3d 1259 (Ind.2015). The substance Tiplick allegedly sold and possessed as a synthetic drug was identified in the probable cause affidavit as XLR11. But that drug was not listed as a synthetic drug on the dates Tiplick’s alleged crimes occurred, and nothing in the charging information indicated which Pharmacy Board emergency rule declared XLR11 a synthetic drug. A Pharmacy Board Emergency Rule, LSA Document #12-493(E), declared XLR11 a synthetic “substance” effective September 15, 2012.
[32] But Ind.Code § 25-26-13-4.1 did not authorize the Pharmacy Board to declare something a “synthetic substance,” in an Emergency Rule. Instead, the Emergency Rule permits the declaration of a substance as a “synthetic drug.” Therefore, to understand the charges, this court held a person of ordinary intelligence would have to first find the definition of “synthetic drug” in Ind.Code § 35-31.5-2-321, determine the synthetic drug alleged to be illegal is not in the very long list (eighty-one specific compounds, and unnamed compounds “structurally derived *1050 from” other compounds), id. at 195 n.13, and finally try to determine whether the drug may have been declared a synthetic drug by a Pharmacy • Board Emergency Rule, the location of which is not specified in Ind.Code § 25-26-13-4.1. This, we believed, the State could not require a citizen of ordinary intelligence to do. ,
[33] Our Indiana Supreme Court vacated our decision and affirmed the denial of Tiplick’s motion to dismiss, holding the statute did provide notice enabling ordinary people to understand the conduct it prohibits: “Despite its cumbersome length and detail, Section 321 is ultimately just a discrete list of chemical formulas and analogs, supplemented with additional chemicals by Section 4.1’s emergency rules.” Tiplick, 43 N.E.3d at 1262-63. The Court conceded -
it may be that a person with ordinary experience' and knowledge does not know what (l-(5-fluoropentyl)indol-3-yl)-(2, 2, 3, 3-tetramethylcyclopro-pyl)methanone is made' of, but that is not the test; rather, it is whether a person of ordinary intelligence would understand his conduct was proscribed. Here, an ordinary Hoosier, armed with this chemical formula for XLRll, could determine through appropriate testing whether he was attempting to sell any products containing it.
Id. at 1263 (emphasis in original).
[34] Our Supreme Court rejected Ti-plick’s characterization of the scheme as a “statutory maze,” id., that prevents a person of ordinary intelligence from being able to discover what conduct is proscribed. “This is not a ‘maze,’ but rather a chain with three links—three discrete statutes which give clear guidance as to how to find everything falling within the definition of ‘synthetic drug’ under Section 321.” Id. at 1264. “[T]he State has provided a ,.. confined universe of investigation.” Id.
[35] Here, as m Tiplick, the State has provided Bellwether with a “confined universe of investigation.” Id.' 1270 I.A.C. 4-1-26 explicitly provides the 2002 edition of the NESC will govern practices involving electrical lines. It notes the address from which the NESC may be obtained, and provides it is also available for copying at the Indiana Government Center.
[36] The majority in the- case before us finds it significant that
the accrual of Bellwether’s claim could not be determined simply by reference to 170 I.A.C. 4-1-26. In fact, such determination could not even be accomplished by referencing the 2002 NESC. Unlike in Illig [v. Union Elec. Co., 652 F.3d 971 (8th Cir.2011) ], the action by the IURC was not sufficient to give notice to a reasonable property owner in Bellwether’s position using reasonable diligence to ascertain that thirteen additional feet of its property beyond the area originally contemplated by the Easement granted in 1957 was subject to the horizontal strike clearance requirements and was within Duke’s control.
(Op. at 1048.)
[37] That some of the information might have been within Duke’s control ’is not a basis for reversal. As the majority correctly notes, under Indiana’s discovery rule a cause of action accrues, and the statute of limitation begins to run, “when a claimant knows or in exercise of ordinary diligence should have known of the injury.” Pflanz v. Foster, 888 N.E.2d 756, 759 (Ind.2008). Bellwether’s easement gave Duke the right to build and maintain electrical lines on the Bellwether property. As explained above, Tiplick instructs us that Bellwether was charged with' knowledge that IURC regulations govern the clearance .needed around electrical lines. The majority points to nothing in the rec-
*1051 ord that reflects the information it characterizes as “wholly within the control of Duke,” (op. at 1046 n.5), such as the voltage levels and types of lines on the property, could not have been obtained by Bellwether through ordinary diligence.
[38] If the “ordinary Hoosier” described in Tiplick can be charged with knowledge and understanding of the complex statutory scheme governing synthetic drugs and synthetic substances, then certainly Bellwether must be charged with knowledge that there were horizontal strike clearance requirements,' what the requirements were, and that they applied to the Bellwether easement. I therefore do not believe our recent Indiana Supreme Court precedent permits the majority’s conclusion Bellwether could not have ascertained what the applicable rules were and how they would have affected the scope of the easement. I must therefore respectfully dissent.

. The majority finds Tiplick distinguishable because the case before us involves application of the discovery rule to Bellwether’s inverse condemnation claim, an inquiry based upon known or ascertainable damage, and not whether a statute is void for vagueness. The majority does not explain why that distinction is significant; I don’t think it is, as the ultimate question we must resolve in this case is whether and when Bellwether should have had knowledge of a law that affected it. Bellwether must be charged with knowledge of its injury, just as Tiplick was charged with knowledge that he couldn’t sell what he sold.