

IN THE

# Court of Appeals of Indiana

Robyn L. Spradlin,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*



FILED

Dec 22 2025, 8:40 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

December 22, 2025

Court of Appeals Case No.
24A-CR-1724

Appeal from the Clark Circuit Court

The Honorable Bradley B. Jacobs, Judge

Trial Court Cause No.
10C02-2101-F6-044

**Opinion by Judge May**
Judges Weissmann and Scheele concur.

**May, Judge.**

[1] Robyn L. Spradlin worked as a registered nurse at Riverview Village, a nursing facility that has a two-step reporting procedure for dispensing controlled substances to patients. This procedure requires nurses to complete one paper form when removing medication from the locked medication cart and then to complete a second electronic documentation when the controlled substance has been administered to the patient. On more than forty occasions between December 1, 2017, and March 31, 2018, Spradlin completed the form indicating she took narcotics from the locked cart without completing the electronic documentation that demonstrated she administered the narcotics to a patient. The State charged Spradlin with Level 6 felony failure to make, keep or furnish records,[1] and a jury found her guilty.

[2] On appeal, Spradlin raises three interrelated issues but we need address only one: whether the State presented sufficient evidence that the second form required by Riverview Village's procedures was a form "required under Article 35-48." Ind. Code § 35-48-4-14(a)(3). Because the State failed to present any evidence to connect Riverview Village's policy to Article 35-48, we reverse.

## Facts and Procedural History

[3] Riverview Village is a long-term care and rehabilitation facility in Clarksville, Indiana. The facility employs a two-step documentation process for controlled

---

[1] Ind. Code § 35-48-4-14(a)(3). As we explain more fully later, the State also charged Spradlin with seven counts of obtaining a controlled substance by fraud or deceit, Ind. Code § 35-48-4-14(c), but the jury found Spradlin not guilty of those charges.

substance administration: nurses first complete a narcotics control/count[2] sheet ("NCS") when removing narcotics from the locked drawer in the locked medication cart, and then they complete an electronic medication administration record ("eMAR") after administering the medication to the patient. The NCS tracks inventory but does not verify patient administration -- only the eMAR serves that function. The eMAR contains all the orders for each patient and protects patients from being overdosed. The facility also has a special process for documenting refused, spilled, or dropped narcotics, which must be accounted for on the NCS by the signature of two nurses who witnessed the "wasting" of the narcotics. (*Id*. at 195.)

[4] In early 2018, a patient at Riverview Village reported that she had not received her pain medication, so the facility reported the situation to Indiana's Department of Health and began an internal investigation. The facility determined nineteen doses of methadone were missing and notified the Department of Health, which notified the Indiana Attorney General's Office. The Attorney General's Medicaid Fraud Unit began investigating a Riverview Village nurse for his involvement with the missing methadone. During that process, Investigator Jack Davis identified suspicious patterns in Spradlin's documentation and expanded his inquiry to include her records. On at least 19 occasions in December 2017, Spradlin had signed the NCS to document

---

[2] Nurse Shelby Carr identified the sheet as a "narcotics count sheet." (Tr. Vol. 4 at 191.) Investigator Jack Davis called it a "narcotic control sheet." (Tr. Vol. 3 at 89.) All witnesses were referencing the same "NCS" form for documenting removing narcotics from the locked drawer of the locked cabinet.

removal of narcotics from the locked cart, but she had not completed corresponding eMAR entries showing she administered the narcotics to the patient. Davis then subpoenaed Spradlin's NCS and eMAR records for January through March 2018, focusing on as-needed prescriptions for hydrocodone and oxycodone. These records demonstrated additional instances in which Spradlin removed narcotics from the locked cart but did not record administering narcotics to a patient. These discrepancies in Spradlin's charting occurred than forty times during the four-month period that was audited.

[5] On January 12, 2021, the State charged Spradlin with seven counts of obtaining a controlled substance by fraud or deceit[3] and one count of failure to make, keep, or furnish records. The night before her scheduled jury trial Spradlin filed a motion to dismiss the allegation that she failed to make, keep, or furnish records, but the trial court denied her motion. Following trial, the jury found Spradlin guilty of only Level 6 felony failure to make, keep, or furnish records. The trial court imposed a one-year sentence, which the court suspended to supervised probation.

---

[3] Ind. Code § 35-48-4-14(c). Each count was based on unaccounted-for doses prescribed to a single patient.

# Discussion and Decision

[6] Spradlin argues the State presented insufficient evidence to support her conviction. Our standard of review regarding sufficiency of the evidence claims is well-settled:

> Sufficiency-of-the-evidence claims . . . warrant a deferential standard, in which we neither reweigh the evidence nor judge witness credibility. Rather, we consider only the evidence supporting the judgment and any reasonable inferences drawn from that evidence. We will affirm a conviction if there is substantial evidence of probative value that would lead a reasonable trier of fact to conclude that the defendant was guilty beyond a reasonable doubt.

*Powell v. State*, 151 N.E.3d 256, 262-63 (Ind. 2020) (internal citations omitted).

[7] Our legislature defined the charged crime as a Level 6 felony that occurs when: "(a) A person . . . (3) recklessly, knowingly, or intentionally fails to make, keep, or furnish a record, a notification, an order form, a statement, an invoice, or information **required under this article**[.]" Ind. Code § 35-48-4-14(a)(3) (emphasis added). The phrase "under this article" refers to Article 48 of Title 35 of Indiana's Criminal Code, and that language should not be treated as mere surplusage. *See Turner v. State*, 253 N.E.3d 526, 537 (Ind. 2025) (We avoid interpretations of statutes "that render any part of the statute meaningless or superfluous."). That language limits the scope of criminal liability for failures to complete medical records to those records required by law, rather than also including records required simply by facility policy or professional standards.

As an element of the crime, the State bore the burden of proving beyond a reasonable doubt that the records Spradlin failed to complete – dozens of eMAR regarding controlled substances – were required under Article 35-48. *See Halsema v. State*, 823 N.E.2d 668, 673 (Ind. 2005) (when the weight of the drug possessed is indicated in statute, that element "must be proven by the State beyond a reasonable doubt" just like any other element of the crime).

[8] At trial, the State presented no documentary evidence establishing what specific law under Article 35-48 required Spradlin to compete the eMAR in addition to the NCS. The probable cause affidavit filed with the information against Spradlin cited Indiana Code section 35-48-3-7 and 21 C.F.R. § 1304.22.[4] The State's proposed jury instruction cited Indiana Code section 35-48-3-7 and 856 I.A.C. 1-28.1-12.[5] The State did not provide a copy of any of those texts to the

---

[4] Spradlin also appeals the trial court's denial of her motion to dismiss, which was based on arguments that the information was insufficiently specific and failed to state a crime. The incredibly detailed probable cause affidavit, which was filed with the information, contained a theory about how the eMAR was required by Article 35-48 and made the State's allegations against Spradlin sufficiently specific to allow her to form a defense. *See Tiplick v. State*, 43 N.E.3d 1259, 1269-70 (Ind. 2015) (holding information adequately informed defendant of synthetic drug allegedly possessed when drug name was provided in probable cause affidavit attached to information). Moreover, the connections between Article 35-48 and the eMAR set out in the probable cause affidavit stated an alleged crime, which the State could then attempt to prove at trial. *See State v. Dickens*, 261 N.E.3d 778, 783 (Ind. Ct. App. 2025) (motion to dismiss should not be granted when defendant's challenge is to facts that would need to be developed at trial), *reh'g denied*. The trial court therefore properly denied Spradlin's motion to dismiss the State's charge of failure to make, keep, or furnish a record.

[5] Spradlin's third issue on appeal was a challenge to the instruction defining the elements the jury needed to find to declare Spradlin guilty of failure to make, keep, or furnish a record. That instruction stated the jury needed to find Spradlin failed to make a record

> in violation of the requirements of Indiana Law and the Indiana Board of Pharmacy Regulations regarding drug distribution, storage, and accountability; specifically, failed to follow the requirement to account for and document the date and time of administration of a controlled substance to a patient/end-user.

jury or have a witness discuss those laws and regulations with the jury, so that the jury could determine that the eMAR was required under Article 35-48.

[9] The State's evidence about whether the eMAR was legally required consisted entirely of inconclusive witness testimony that was insufficient to establish the eMAR was required by Article 35-48. Investigator Jack Davis testified that nurses must complete "required documents" including "the medication administration record." (Tr. Vol. 3 at 69.) However, he never identified any specific law requiring these documents, much less one located under Article 35-48. Medical records coordinator Judith Napier testified that documentation was required by "facility policy" and the State Board of Health, but she explicitly admitted she could not identify the specific regulation underlying the Board of Health's requirement. (*Id*. at 234.) Nor, if she had named a Board of Health regulation, would the violation of that regulation demonstrate a violation under Article 35-48 without additional testimony to connect the regulation to the criminal code.

[10] Director of Nursing Shelby Carr provided the most direct testimony about legal requirements when she stated that proper documentation was "the law, it's a regulation[.]" (Tr. Vol. 4 at 199-200.) However, defense counsel immediately

---

(Tr. Vol. 5 at 71.) Spradlin argues the instruction "is fundamentally erroneous because it omits the essential element that the record keeping law that is violated must be found under Article 48." (Appellant's Br. at 15.) We also note that, when the State submitted its proposed jury instructions during the week of trial, it was the first time Spradlin was given notice that the State believed she had an obligation under 856 I.A.C. 1-28.1-12 to complete the eMAR. Because we reverse Spradlin's conviction for insufficient evidence, we simply note the irregularities without addressing them further.

objected that this testimony constituted an improper legal conclusion that invaded the province of the jury and violated the court's ruling on the defense motion in limine. (*Id.* at 200-01.) The trial court sustained the objection and immediately admonished the jury: "The question was asked about requirements under the law, whether or not Miss Spradlin broke the laws of the State of Indiana or the issues that you have in front of you is ultimately a question that will be decided by you." (*Id.* at 201-02.) This curative instruction effectively stripped Carr's testimony of any evidentiary value regarding whether a legal requirement existed. The trial court made clear that Carr's opinion about what "the law" required was not evidence upon which the jury could rely. Even had the trial court not removed this evidence from consideration, it could not have demonstrated the eMAR is required under Article 35-48, which was the statutory element that the State was required to prove.

[11] At the close of the State's evidence, defense counsel moved for directed verdict, specifically arguing: "I didn't hear any testimony about what the law is. I heard a lot of testimony about what the policy was and whether Miss Spradlin violated a policy, but I didn't see the specifics of the law." (Tr. Vol. 5 at 50.) The prosecutor seemed to acknowledge the absence of proof but claimed the State had been "shut down by the defense saying that is a matter for the jury to decide what the law is" when attempting to present evidence about legal requirements. (*Id.*) The State argued that the jury instruction would supply the law: "[T]his is going to be a matter for the jury to decide. And they are going to be instructed on the law under which Robyn Spradlin was charged and to

evaluate the evidence that they were given in that regard." (*Id.*) The trial court denied the motion for directed verdict, finding "at least the very small burden has been met, to leave it to the jury." (*Id.* at 51.)

[12] The State's theory – that jury instructions can substitute for evidence of an essential element – is flawed. "Jury instructions inform the jury of the law applicable to the facts of the particular case." *Elliott v. State*, 786 N.E.2d 799, 801 (Ind. Ct. App. 2003). Instructions do not supply evidence of facts. The State bore the burden of proving as a factual matter that Spradlin failed to make records required under Article 35-48. An instruction cannot bootstrap insufficient evidence into sufficiency by asserting the existence of an unproven fact. *E.g., Keister v. State*, 203 N.E.3d 548, 552 (Ind. Ct. App. 2023) (to be proper, jury instructions must be correct statements of law and supported by evidence in record).

[13] On appeal, the State argues Indiana Code Section 35-48-3-7 requires: "Persons registered to manufacture, distribute, or dispense controlled substances under this article shall keep records and maintain inventories in conformance with the record-keeping and inventory requirements of federal law and with any additional rules the [Board of Pharmacy] issues." The State then points to the federal regulation at 21 C.F.R. § 1304.22(c) and Indiana Board of Pharmacy rule at 856 I.A.C. 1-28.1-12(f)(1), (3), which require documentation of controlled substance administration including date, time, patient identification, and administrator identity. (*See Appellee's Br.* at 35-36.) These legal arguments may be entirely correct as a matter of law, but no evidence to support this

theory was presented to the jury. Nor did the State present evidence that Spradlin, as a registered nurse, was a person "registered to manufacture, distribute, or dispense controlled substances" such that she was bound by Indiana Code section 35-48-3-7. We cannot affirm Spradlin's conviction based on theories and evidence that were not provided to the jury. *See McCormick v. United States*, 500 U.S. 257, 270 n.8 (1991) (reversing federal appellate court decision because it impermissibly "affirmed McCormick's conviction on legal and factual theories never tried before the jury").

[14] The State presented substantial evidence that Spradlin removed controlled substances from the medication cart on more than forty occasions and completed NCS forms documenting that removal but she did not complete the corresponding eMAR to demonstrate administration of those narcotics to a patient. The State presented evidence that eMAR documentation was important for patient safety and facility accountability. The State presented evidence that nurses receive training on proper documentation in nursing school and at facility orientation. The State presented evidence that Spradlin knew the proper procedure, as she correctly described it during her interview with Investigator Davis. This evidence was sufficient to prove that Spradlin failed to comply with facility documentation requirements and potentially violated professional nursing standards. It was not sufficient, however, to prove that she violated a legal requirement under Article 35-48 of the Indiana Criminal Code, which was required to convict her of the offense charged. Without evidence establishing this element, Spradlin's conviction cannot stand.

## Conclusion

The State failed to demonstrate the eMAR that Spradlin did not complete were records required to be made under Title 35, Article 48, which was an element of the crime charged. Because of that failure of proof, we much reverse.

Reversed.

Weissmann, J., and Scheele, J., concur.

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Fishers, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General
Indianapolis, Indiana

Ellen H. Meilaender
Supervising Deputy Attorney General
Indianapolis, Indiana