## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 18 2016, 8:04 am

Kevin S. Smith

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Elizabeth A. Bellin
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Akheem J. Purnell,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

February 18, 2016

Court of Appeals Case No.
20A03-1507-CR-1008

Appeal from the Elkhart Superior Court

The Honorable Stephen R. Bowers, Judge

Trial Court Cause No.
20D02-1501-F2-1

**Pyle, Judge.**

# Statement of the Case

Akheem J. Purnell ("Purnell") appeals, following a jury trial, his convictions and sentence for Level 2 burglary while armed with a deadly weapon[1] and Level 3 robbery while armed with a deadly weapon.[2] Purnell argues that: (1) his two convictions violate the Indiana Constitutional prohibition against double jeopardy because they were enhanced by evidence of the same deadly weapon; and (2) his sentence is inappropriate under Indiana Appellate Rule 7(B). Because our Supreme Court has established that the use of a single deadly weapon during the commission of separate offenses may be used to enhance the level of each offense without resulting in a violation of the Indiana Double Jeopardy Clause, we affirm his convictions. Additionally, because Purnell has failed to show that his sentence is inappropriate in light of the nature of the offense and his character, we affirm his sentence.

We affirm.

# Issues

1. Whether Purnell's convictions violate the Indiana Constitutional prohibition against double jeopardy.

2. Whether Purnell's sentence is inappropriate pursuant to Indiana Appellate Rule 7(B).

---

[1] IND. CODE § 35-43-2-1(3)(A).

[2] I.C. § 35-42-5-1(2).

## Facts

On January 13, 2015, around 6:00 p.m., Ashley Sanders ("Sanders") was at her house with Angela Coleman ("Coleman") and Shaneka Ballard ("Ballard"). Sanders's two children and Coleman's three children, who were between the ages of three and twelve years old, were also at Sanders's house. As the women were sitting at the kitchen table, which had marijuana on it, they heard a knock at the front door. Sanders went to the door and, with the door still closed, asked who was there. A man then asked for Sanders's boyfriend by name. Sanders replied that her boyfriend was not there.[3] After the man left, Sanders looked out the door and saw "a bunch of guys outside." (Tr. 50).

Sanders returned to the kitchen and told Coleman and Ballard what had happened. The three women then walked toward the front door, and a man knocked on the door and again asked for Sanders's boyfriend. After Sanders told him that her boyfriend was not there, the man asked, "Where's the weed at?" (Tr. 51). The man then kicked in the door, entered the house, and yelled, "Get the f**k down." (Tr. 51). Sanders heard a "clicking noise" that sounded like a gun, and she ran out the back door and to a neighbor's house to call the police.

Meanwhile, eight to ten men—all armed with guns and wearing bandana masks—also entered the house, pointed their guns, and ordered the remaining

---

[3] Sanders's boyfriend was in jail.

women and children to get on the ground. One man asked, "Where's my s**t at[?]" and another one asked, "Where's the stuff?" (Tr. 113). One man was pointing a gun at Ballard when his gun "slipped" or "dropped" from his hand. (Tr. 106). As he reached down for the gun, his bandana mask fell from his face, and Ballard recognized him as Purnell, whom she knew by his nickname, "Bama." (Tr. 109). Ballard—who had known Purnell for over ten years since elementary school—said, "Bama, are you serious?" (Tr. 111). Purnell responded, "This has nothing to do with you. Be quiet." (Tr. 111). As some of the men held the women and children at gunpoint, others went to the bedrooms, pulled out the drawers, and "ransacked" the house. (Tr. 56). After taking Sanders's cellphone, her house and car keys, a "collection" of athletic shoes, some marijuana, and some money from Ballard's backpack, the men left the house. (Tr. 55).

[6] Approximately fifteen to thirty minutes after the crimes, Ballard contacted Purnell by sending a private message through Facebook[4] and told him that she wanted her belongings returned. Purnell responded that Ballard "was not supposed to be there" and gave her his cell phone number, asking her to call him. (State's Ex. 21). He also wrote that she should "[b]e cool" and "don't say s**t" because he would return her belongings. (State's Ex. 21). Ballard then called the cell phone number and recognized Purnell's voice. She said,

---

[4] Ballard was a Facebook friend of Purnell, whose Facebook user name was "Bama Purnell." (State's Ex. 21).

"Bama[,]" and he "instantly went into that [he] would get [her] stuff back" and that "he knew exactly who had it." (Tr. 143). Purnell told her that he "was sorry" and would return her things. (Tr. 143).

[7] The following day, Ballard informed the police of her conversation with Purnell, and she identified him on a photo array. When the police met with Purnell, they got his cell phone, called the phone number that Ballard had provided from the Facebook conversation, and Purnell's phone rang.

[8] Thereafter, the State charged Purnell with Level 2 burglary while armed with a deadly weapon and Level 3 robbery while armed with a deadly weapon. The trial court held a two-day jury trial on June 2-3, 2015. During the trial, all three women testified, and Ballard identified Purnell as one of the perpetrators and testified that he had a gun during the crimes. The State also introduced evidence of Ballard's Facebook conversation with Purnell.

[9] Purnell's defense was that Ballard had misidentified him. During his closing argument, his counsel challenged the credibility of Ballard and the other victims and suggested that they had provided inconsistent testimony regarding details of the crimes. Purnell also tried to discount Ballard's testimony regarding contacting him on Facebook by suggesting that it might not have been his

Facebook page and that someone could have made up a fake Facebook page.[5] The jury found Purnell guilty as charged.

[10] Subsequently, on July 6, 2015, the trial court held a sentencing hearing. As part of his statement, Purnell asserted that he felt that he had been "wrongfully accused of this crime by the jury." (Tr. 298). His attorney argued that the trial court should not enter judgment of conviction on Purnell's robbery offense, asserting that there was a "double jeopardy issue" and suggesting that the same evidence had been used to establish the essential elements of both offenses.[6] (Tr. 297). The prosecutor responded that the robbery conviction did not need to be merged or dismissed because the evidence showed that the burglary had been completed before the robbery occurred.

[11] Prior to imposing Purnell's sentence, the trial court asked him who else had been involved in the crimes, and he responded that had "no idea" who they were. (Tr. 303).[7] When sentencing Purnell, the trial court stated:

> Well Mr. Purnell, I've heard all the evidence in this case along with the jury and the evidence was overwhelming. There was no question that you were present and part of this enterprise.

---

[5] Purnell's counsel compared the situation to "Monte Teo[,] . . . the Notre Dame football player" that "[f]ell for a fake Facebook account." (Tr. 267).

[6] Purnell's double jeopardy argument did not focus on the enhancement of the crimes by the use of a deadly weapon.

[7] Apparently, at the time of sentencing, the other perpetrators of the crimes had not been identified.

The text messages . . . the communications that were had after the event, I - they weren't actually text messages, confirm your involvement here. And the only - the only thing that I can conclude is that when you tell me you don't know who else was involved and you say you weren't involved is that you were less than candid with the jury and you're being less than - less than honest with me. And that expression of remorse that was conveyed earlier is hollow and doesn't really mean anything.

I look at the aggravating circumstances here, I see a young man who has a juvenile record that includes receiving stolen property and theft, criminal mischief, battery, and possession - I believe it was possession of marijuana, but the main thing is that there are at least five adjudications, which were four offenses that would have been crimes if committed by an adult. I'm not considering in any way your multiple truancy or runaway status convictions as aggravating circumstances.

I also note as I review the presentence investigation that your performance while on Probation or subject to the authority of the juvenile court was far from what was expected from you. You were threatening to staff members, you were violating the terms of your juvenile sentence and that too is an aggravating circumstance.

The mitigating circumstance here, at age twenty-one, is that you're still a young man, although you're on the, the edge of the age range that I would consider to be a mitigating circumstance. I still think that's a mitigating circumstance here.

* * * * *

And in spite of the fact that from the trial testimony you expressed some remorse to the victim here at that point because you know, she wasn't supposed to be there. She wasn't the target of all this. In fact, the evidence suggest that none of the young women who were present were the target of this crime. But that

> doesn't mean that there wasn't intent to commit a burglary, that doesn't mean that there wasn't a robbery here, that doesn't mean that you didn't actively participate in these crimes.

(Tr. 303-05). The trial court found that the aggravating circumstances outweighed the sole mitigating factor of Purnell's young age. The trial court imposed a twenty-five (25) year sentence, with twenty (20) years executed and five (5) years suspended to probation, for his Level 2 felony conviction and imposed a ten (10) year sentence for his Level 3 felony conviction. The trial court ordered these sentences to be served concurrently. Purnell now appeals.

# Decision

[12] Purnell argues that: (1) his two convictions violate the Indiana Constitutional prohibition against double jeopardy because they were both enhanced by evidence of the same deadly weapon; and (2) his sentence is inappropriate. We will review each argument in turn.

### 1. Double Jeopardy

[13] Turning first to Purnell's double jeopardy argument, we note the Indiana Double Jeopardy Clause provides, in relevant part, that "No person shall be put in jeopardy twice for the same offense." IND. CONST. art. I, § 14. "Indiana's Double Jeopardy Clause was intended to prevent the State from being able to proceed against a person twice for the same criminal transgression." *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999). Consequently, two or more offenses are the "same offense" and violate the state double jeopardy clause if, "with respect to either the statutory elements of the challenged crimes or the actual evidence

used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Id.*

[14] Purnell contends that his convictions violate the Double Jeopardy Clause under the actual evidence test. The Double Jeopardy Clause is violated under the actual evidence test if there is "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Id*. at 53. "[A] 'reasonable possibility' that the jury used the same facts to reach two convictions requires substantially more than a logical possibility." *Lee v. State*, 892 N.E.2d 1231, 1236 (Ind. 2008). "Rather, 'reasonable possibility' turns on a practical assessment of whether the jury may have latched on to exactly the same facts for both convictions." *Id. See also Griffin v. State*, 717 N.E.2d 73, 89 (Ind. 1999) ("To establish that two offenses are the same offense under the actual evidence test, the possibility must be reasonable, not speculative or remote."), *cert. denied*. Our supreme court explained that "under the *Richardson* actual evidence test, the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense." *Guyton v. State*, 771 N.E.2d 1141, 1142 (Ind. 2002) (quoting *Spivey v. State*, 761 N.E.2d 831, 833 (Ind. 2002)).

[15] Purnell does not challenge the evidence establishing the underlying elements of burglary and robbery. Instead, his actual evidence argument lies in his

contention that "there is a reasonable possibility that the jury used the same evidence to establish the 'while armed with a deadly weapon' enhancement in both Count I and Count II." (Purnell's Br. 8-9). He asserts that because "[t]here was no separate evidence presented to show that [he] was armed with a deadly weapon at separate points in time to substantiate an enhancement on both counts[,]" his robbery conviction should be reduced to a Level 5 felony. (Purnell's Br. 6). In support of his argument that his convictions cannot be enhanced by the use of the same deadly weapon, he relies on *Smith v. State*, 872 N.E.2d 169 (Ind. Ct. App. 2007), *trans. denied*, and attempts to analogize the prohibition of enhancing multiple convictions based on the same bodily injury to the enhancement of convictions by the same deadly weapon.

[16] The State, on the other hand, asserts that "[t]he mere fact that the State used the same gun as evidence of the deadly weapon for [Purnell's] burglary and robbery convictions does not establish a double jeopardy violation under the actual evidence test." (State's Br. 11) (citing *Miller v. State*, 790 N.E.2d 437, 439 (Ind. 2003); *Leggs v. State*, 966 N.E.2d 204, 209 (Ind. Ct. App. 2012); *Bunch v. State*, 937 N.E.2d 839, 847-48, 849 (Ind. Ct. App. 2010), *trans. denied*; *Rawson v. State*, 865 N.E.2d 1049, 1055 (Ind. Ct. App. 2007), *trans. denied*).

[17] Purnell's argument falls into "a series of rules of statutory construction and common law that supplements the constitutional protections afforded by the Indiana Double Jeopardy Clause." *Miller*, 790 N.E.2d at 439 (citing *Pierce v. State*, 761 N.E.2d 826, 830 (Ind. 2002); *Spivey*, 761 N.E.2d at 834). "Among these is the rule that precludes a '[c]onviction and punishment for an

enhancement of a crime where the enhancement is imposed for the *very same behavior* or harm as another crime for which the defendant has been convicted and punished.'" *Sistrunk v. State*, 36 N.E.3d 1051, 1053-54 (Ind. 2015) (quoting *Guyton,* 771 N.E.2d at 1143 (quoting *Richardson,* 717 N.E.2d at 56 (Sullivan, J., concurring))) (emphasis added by *Sistrunk* Court).

[18]     We agree with the State that there is no double jeopardy violation. While the State cannot use evidence of the same bodily injury to enhance multiple offenses, *see Miller*, 790 N.E.2d at 439 (citing *Pierce*, 761 N.E.2d at 830), our state double jeopardy law does not prohibit multiple enhancements based on a defendant's use of the same weapon in the commission of multiple offenses. *See id. See also Sistrunk,* 36 N.E.3d at 1054 ("committing two or more separate offenses while armed with a deadly weapon . . . is not within the category of rules precluding enhancement of each offense based on 'the very same behavior.'"); *Berg v. State*, No. 32A01-1504-CR-127, 2015 WL 6681087, at *4 (Ind. Ct. App. Oct. 30, 2015) (clarifying that while the State is prohibited from using the same bodily injury to enhance multiple offenses, it is not prohibited from enhancing multiple offenses by the defendant's use of the same weapon when committing multiple offenses).

[19]     "The repeated use of a weapon to commit multiple separate crimes is not 'the very same behavior' precluding its use to separately enhance the resulting convictions." *Miller*, 790 N.E.2d at 439. "Rather, the use of a 'single deadly weapon during the commission of separate offenses may enhance the level of each offense.'" *Id.* (quoting *Gates v. State*, 759 N.E.2d 631, 633 n. 2 (Ind.

2001)).  Indeed, our supreme court recently explained that the holding expressed in *Miller*—that "the use of a single deadly weapon during the commission of separate offenses may enhance the level of each offense"—is a "rule [that] predates *Richardson* by several years and thus cannot be said to be included in the 'very same behavior' category of examples precluding enhancements."  *Sistrunk*, 36 N.E.3d at 1054 (citing multiple cases).  The *Sistrunk* Court also noted that it had made the same observation post-*Richardson*.  *Id.* (citing *Gates*, 759 N.E.2d at 633 n.2; *Miller*, 790 N.E.2d at 439).  The *Sistrunk* Court then clarified:

> In sum, our jurisprudence teaches that committing two or more separate offenses each while armed with a deadly weapon—even the same weapon—is not within the category of rules precluding the enhancement of each offense based on "the very same behavior."  Stated somewhat differently, our recognition in *Richardson* of the common law rule establishing that enhancements cannot be imposed for the very same behavior could not have included use of a single deadly weapon during the commission of separate offenses.  And this is so because no such common law rule existed.  Instead the opposite was true.

*Id.*

[20]    Here, there is no dispute that Purnell's burglary and robbery were separate offenses.  The State introduced evidence that Purnell was armed with a gun when he and his cohorts kicked in the door of and entered Sanders's house and that he had the same gun when he assisted in the commission of the robbery offense.  Because our Supreme Court has established that the use of a single

deadly weapon during the commission of separate offenses may be used to enhance the level of each offense and does not result in a violation of the Indiana Double Jeopardy Clause, we affirm Purnell's convictions. *See, e.g.*, *Sistrunk*, 36 N.E.3d at 1054 (reviewing double jeopardy cases and holding that the defendant's commission of robbery and criminal confinement while armed with the same gun was not within the category of double jeopardy rules precluding the enhancement of each offense based on the very same behavior); *Miller*, 790 N.E.2d at 439 (holding that there was no double jeopardy violation where the defendant's convictions for criminal confinement, robbery, and criminal deviate conduct were enhanced by use of the same knife); *Gates*, 759 N.E.2d at 633 n.2 ("It is well established in Indiana that the use of a single deadly weapon during the commission of separate offenses may enhance the level of each offense."). *See also Leggs*, 966 N.E.2d at 209 (holding that the defendant "was not subjected to double jeopardy when he was convicted of multiple crimes enhanced by the use of a knife"); *Bunch*, 937 N.E.2d at 848 (holding that the use of the sawed-off shotgun to enhance the defendant's robbery and confinement convictions did not constitute double jeopardy); *Rodriguez v. State*, 795 N.E.2d 1054, 1058 (Ind. Ct. App. 2003) (explaining that the defendant's use of a shotgun to commit multiple offenses did not preclude the separate enhancement of the offenses and did not violate double jeopardy principles), *trans. denied*.

## 2. Sentencing

[21] Purnell contends that his aggregate sentence of twenty-five years, with twenty years executed and five years suspended to probation, for his Level 2 felony conviction and his Level 3 felony conviction is inappropriate. Purnell, who was twenty-one years old at the time of his offenses and had a history of juvenile offenses, suggests that his sentence was inappropriate because this was his first adult felony conviction.

[22] We may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). The defendant has the burden of persuading us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). The principal role of a Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008).

[23] Whether a sentence is inappropriate ultimately turns on "the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case." *Id.* at 1224. Additionally, "[u]nder Indiana law, several tools are available to the trial court to use in fashioning an appropriate sentence for a convicted offender." *Sharp v. State*, 970 N.E.2d 647, 650 (Ind. 2012). These "penal tools"—which include suspension of all or a portion of the sentence, probation, executed time in a Department of Correction facility, and concurrent rather than consecutive sentences—"form an integral part of the actual aggregate penalty faced by a defendant and are

thus properly considered as part of the sentence subject to appellate review and revision." *Id.* (citing *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010)).

[24] When determining whether a sentence is inappropriate, we acknowledge that the advisory sentence "is the starting point the Legislature has selected as an appropriate sentence for the crime committed." *Childress*, 848 N.E.2d at 1081. Here, the jury found Purnell guilty of Level 2 felony burglary and Level 3 felony robbery. The sentencing range for a Level 2 felony is between ten (10) and thirty (30) years, with an advisory sentence of seventeen and one-half (17 ½) years. I.C. § 35-50-2-4.5. The sentencing range for a Level 3 felony is between three (3) and sixteen (16) years, with an advisory sentence of nine (9) years. I.C. § 35-50-2-5. At sentencing, the trial court found that the aggravating circumstances, including Purnell's criminal history and prior failed attempts at probation, outweighed the sole mitigating factor of Purnell's young age. The trial court imposed a twenty-five (25) year sentence with twenty (20) years executed and five (5) years suspended to probation for his Level 2 felony conviction and imposed a ten (10) year sentence for his Level 3 felony conviction, and it ordered these sentences to be served concurrently. Thus, the trial court utilized some of the available "penal tools" to fashion a sentence for Purnell. *See Sharp*, 970 N.E.2d at 650.

[25] The nature of Purnell's offenses reveals that he and a group of up to ten men— all of whom were armed with guns and wearing masks—kicked in the door of a house containing three women and five minor children. Purcell and his cohorts were in search of drugs. Thereafter, they pointed their guns at the women and

children and then took money, keys, shoes, marijuana, and a cellphone from the house. Purnell attempts to minimize the nature of his offenses by pointing out that he may have been found guilty under an accomplice liability theory and suggesting that he did not personally carry any items out of the house. We do not find merit in this argument. Indeed, an "individual who aids another person in committing a crime is as guilty as the actual perpetrator." *Sanquenetti v. State*, 727 N.E.2d 437, 441 (Ind. 2000).

[26] Turning to Purnell's character, we see from the record that Purnell had a history of juvenile adjudications for receiving stolen property, theft, criminal mischief, disorderly conduct, and possession of marijuana. Additionally, he also had violations of juvenile probation. Purnell suggests that his character should be viewed with favor because this was his first adult felony conviction. Purnell also asserts that he "immediately expressed remorse and offered to make right what was taken[.]" (Purnell's Br. 13). The trial court, however, factored in Purnell's age and proffered remorse when sentencing him. Indeed, the trial court considered his age to be a mitigating circumstance but determined that it was not a particularly weighty one. Additionally, before imposing Purnell's sentence, the trial court noted that his expression of remorse was "hollow." (Tr. 303). We will not reweigh the trial court's determinations.

[27] Purnell has not persuaded us that that his aggregate twenty-five year sentence, with twenty years executed and five years suspended to probation, for his Level 2 felony and Level 3 felony convictions is inappropriate. Therefore, we affirm the trial court's sentence.

Affirmed.

Baker, J., and Bradford, J., concur.